UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JENNIFER VAZQUEZ RIVERA, | ) | CIVIL ACTION NO. 4:21-CV-215 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI, | ) | |
| *Acting Commissioner of Social Security* | ) | |
| Defendant | ) | |

<u>MEMORANDUM OPINION</u>

I.    INTRODUCTION

Plaintiff Jennifer Vazquez-Rivera, an adult individual who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, I find the Commissioner's final decision is not supported by substantial evidence. Accordingly the Commissioner's final decision will be VACATED and this case will be REMANDED to the Commissioner to

Page 1 of 19

conduct a new administrative hearing pursuant to sentence four of 42 U.S.C.

§ 405(g).

II.      BACKGROUND & PROCEDURAL HISTORY

On April 5, 2019, Plaintiff protectively filed an application for disability insurance benefits under Title II of the Social Security Act. (Admin. Tr. 15).[1] On December 4, 2019, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. *Id.* In these applications, Plaintiff alleged she became disabled on January 1, 2019. *Id.* Plaintiff later amended her onset date to March 21, 2019. *Id.* On her amended onset date, Plaintiff was 37 years old. In her initial application Plaintiff alleged she is disabled due to the following conditions: asthma, depression, ventricular tachycardia, sleep apnea, anxiety, pulmonary lung capacity condition, and diabetes type II. (Admin. Tr. 263). During the application process, however, Plaintiff alleged she was diagnosed with the following additional impairments, which contribute to her inability to work: "osteoarthritis of the left hip, bipolar disorder, thyroid disorder, and migraine headaches." (Admin. Tr. 306).

---

[1] The application itself is dated May 10, 2019. (Admin. Tr. 214). The initial review documents suggest the application was filed on April 15, 2019. (Admin. Tr. 82).

Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, understand, follow instructions, and get along with others. (Admin. Tr. 296). Plaintiff also alleges that her conditions affect her memory. *Id.* Plaintiff has at least a high school education. (Admin. Tr. 25).

Before the onset of her impairments, Plaintiff worked as a janitorial supervisor, and administrative clerk. *Id*.

On October 25, 2019, Plaintiff's Title II application was denied at the initial level of administrative review. (Admin. Tr. 92). It is not clear when or whether the subsequently filed Title XVI application was assessed at the initial level.[2] On May 20, 2020, Plaintiff's applications were denied at the reconsideration level of administrative review. (Admin. Tr. 15). On June 3, 2020, Plaintiff requested an administrative hearing. *Id*.

On September 14, 2020, Plaintiff, with assistance from counsel, appeared and testified during a hearing before Administrative Law Judge Howard Kauffman (the "ALJ"). *Id*. On September 24, 2020, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 9-31). On September 29, 2020, Plaintiff

---

[2] The ALJ decision suggests that both applications were denied at the initial level on November 4, 2019—approximately one month *before* the Title XVI application was filed. (Admin. Tr. 15).

requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 210).

On December 7, 2020, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1).

On February 5, 2021, Plaintiff filed the complaint in this action. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence, and improperly applies the relevant law. *Id*. As relief, Plaintiff requests that the district court enter an order reversing the Commissioner's final decision and award benefits effective March 21, 2019. *Id*.

On October 8, 2021, the Commissioner filed an answer. (Doc. 17). In the answer, the Commissioner maintains that the decision denying Plaintiff's applications was made in accordance with the law and is supported by substantial evidence. *Id*. Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 18).

Plaintiff's Brief (Doc. 23) and the Commissioner's Brief (Doc. 24) have been filed. Plaintiff did not file a reply. This matter is ready to decide.

III.    STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals.

A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood,* 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being

Page 5 of 19

supported by substantial evidence." *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is supported by substantial evidence the court must scrutinize the record as a whole." *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

In practice, this is a twofold task. First, the court determines whether the final decision is supported by substantial evidence. To accomplish this task, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's

findings, but also whether those findings were made based on a correct application of the law. *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . ."). In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder." *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

Second, the court must ascertain whether the ALJ's decision meets the burden of articulation the courts demand to enable judicial review. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.

*Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

    B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP
        SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).[3] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

---

[3] Throughout this Opinion, I cite to the version of the administrative rulings and regulations that were in effect on the date the Commissioner's final decision was issued. In this case, the ALJ's decision, which serves as the final decision of the Commissioner, was issued on September 24, 2020.

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1). In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents

him or her from engaging in any of his or her past relevant work. 42 U.S.C. §
423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by
reference); 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.
Once this burden has been met by the claimant, it shifts to the Commissioner at step
five to show that jobs exist in significant number in the national economy that the
claimant could perform that are consistent with the claimant's age, education, work
experience and RFC. 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3);
*Mason*, 994 F.2d at 1064.

C.    STANDARDS GOVERNING AN ALJ'S ASSESSMENT OF MEDICAL
       DETERMINABILITY AT STEP TWO

In a similar fashion to the regulations setting out the five-step sequential
evaluation process, the Social Security Regulations set out a two-step process for
evaluating impairments at step two. At this step of the sequential evaluation process,
the ALJ considers whether a claimant's impairment is (1) medically determinable or
non-medically determinable, and (2) severe or non-severe; this step is essentially a
threshold test.  20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 416.920(a)(4)(ii).

To be considered medically determinable, an impairment must be established
by objective medical evidence from an acceptable medical source.  A claimant's
statement of symptoms, a diagnosis that is not supported by objective evidence, or a
medical opinion not supported by objective evidence, is not enough to establish the

existence of an impairment.  20 C.F.R. § 404.1521; 20 C.F.R. § 416.921; 20 C.F.R.

§ 404.1502; 20 C.F.R. §416.902; SSR 96-4p, 1996 WL 374187 at *1("regardless of

how many symptoms an individual alleges, or how genuine the individual's

complaints appear to be, the existence of a medically determinable physical or

mental impairment cannot be established in the absence of objective medical

abnormalities. . . ."). A claimant's symptoms, such as pain, fatigue, shortness of

breath, weakness, or nervousness, will not be found to affect a claimant's ability to

do basic work activities unless medical signs or laboratory findings show that a

medically determinable impairment is present.  20 C.F.R. § 404.1529(b); 20 C.F.R.

§ 416.929(b).

Symptoms or limitations that a claimant alleges are caused by a non-medically

determinable impairment are excluded from an ALJ's RFC assessment.

## IV.   DISCUSSION

In her statement of errors, Plaintiff raises the following issues:

(1)   "Whether the Administrative Law Judge erred and abused his
discretion by failing to consider the limitations in Plaintiff's residual
functional capacity from those impairments that the Administrative
Law Judge considered to be severe, including asthma, sleep apnea,
diabetes, carpal tunnel syndrome, obesity, depression and anxiety[.]"
(Doc. 23, p. 1).

(2)   "Whether the Administrative Law Judge erred and abused his
discretion by failing to consider the limitations from those conditions
that the Administrative Law Judge did not consider to be severe, or even

mentioned in his decision, including Plaintiff's diagnosed Bi-Polar disorder, migraine headaches, and osteoarthritis of the left hip[.]" (Doc. 23, pp. 1-2).

(3)     "Whether the Administrative Law Judge erred and abused his discretion in setting forth his determination of Plaintiff's residual functional capacity in light of the opinion of Medical Consultative Exam Physician, Dr. Karena Hammon, which opinions were not afforded sufficient weight regarding Plaintiff's exertional and non-exertional limitations[.]" (Doc. 23, p. 2).

A.     THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In his September 2020 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through September 30, 2024. (Admin. Tr. 17). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between May 21, 2019 (Plaintiff's alleged onset date) and September 24, 2020 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 26).[4]

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: asthma, sleep apnea,

---

[4] In the decision itself, the ALJ concludes that Plaintiff was not disabled from January 1, 2019 (Plaintiff's original alleged onset day before it was amended) through September 24, 2020. (Admin. Tr. 26). This appears to be an error. No party suggests it requires remand.

diabetes, carpal tunnel syndrome, obesity, depression, and anxiety. (Admin. Tr. 17). The ALJ also found that Plaintiff had a medically determinable non-severe cardiac dysrhythmia. (Admin. Tr. 18).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 18).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 404.1567(a) and 20 C.F.R. § 416.967(a) except:

> she can engage in occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, but never climbing of ladders, ropes, or scaffolds, can tolerate no exposure to extreme cold, extreme heat, unprotected heights, moving mechanical parts, or exposure to fumes, dusts, gases, odors, and poor ventilation, and retains the capacity to perform simple, routine, repetitive tasks, but no work at production rate pace, and can tolerate occasional interaction with the public, supervisors, and co-workers in low stress job that is defined as few workplace changes.

(Admin. Tr. 20).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in her past relevant work. (Admin. Tr. 25).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 25-26). To support his conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three representative occupations: carding machine operator, DOT #681.685-030; final assembler of optical goods, DOT #713.687-018; and dowel inspector, DOT #669.687-014. *Id*.

B.   WHETHER THE ALJ FAILED TO EVALUATE SEVERAL OF PLAINTIFF'S IMPAIRMENTS

Plaintiff argues that the ALJ failed to explain what limitations resulted from the following impairments: bipolar disorder, obsessive compulsive disorder, migraine headaches, and left hip osteoarthritis.

The court agrees that the available records documenting Plaintiff's allegations of what her impairments are and the diagnoses found in the reports of consultative examiners and state agency consultants confirm that Plaintiff alleged she had these conditions, and that the ALJ should have been on notice of those allegations. The Commissioner is correct that Plaintiff did not identify these impairments in her initial applications. (Admin. Tr. 263). However, an application for disability benefits is often a years-long process. It is not uncommon for a claimant to develop additional

health concerns while an application is pending. That appears to be exactly what happened in this case.

The earliest reference to these diagnoses appears in consultative examination reports. On October 9, 2019, a consultative examiner in the field of internal medicine identified the following diagnoses: severe asthma; hypertension; diabetes; history of ventricular tachycardia; post-traumatic stress disorder; depression; **bipolar**; anxiety; sleep apnea; hypothyroidism; **chronic left hip pain**; and obesity. (Admin. Tr. 1120). On the same day, a second consultative examiner, in the field of psychology, identified **bipolar disorder as a diagnosis**. (Admin. Tr. 1151). He also identified the following medical diagnoses (as reported by Plaintiff): Asthma; ventricular tachycardia; sleep apnea; pulmonary lung capacity condition; diabetes; high blood pressure; thyroid issues; **arthritis**; **migraines**; and acid reflux. *Id.* Although the ALJ weighed both of these opinions in his decision, he did not discuss the diagnoses they contained.

On December 10, 2019, Plaintiff expressly informed the Social Security Administration that she had been diagnosed with some new conditions, "**osteoarthritis of the left hip**, **bipolar disorder**, thyroid disorder, and **migraine headaches**." (Admin. Tr. 306).

On May 19, 2020, a state agency medical consultant noted that x-rays of Plaintiff's **left hip showed osteoarthritis**. (Admin. Tr. 105). As with the consultative examiner reports, the ALJ considered this prior administrative medical finding, but did not address the diagnoses it contained.

On May 20, 2020, a state agency psychologist identified the following impairments in a prior administrative medical finding: asthma; sleep-related breathing disorders; diabetes mellitus; cardiac dysrhythmias; carpal tunnel syndrome; **other unspecified arthropathies**; depressive, **bipolar and related disorders**; and **anxiety and obsessive-compulsive disorders**. (Admin. Tr. 101). The same evaluator identified **bipolar disorder** as a medically determinable impairment in the body of his prior administrative medical finding. (Admin. Tr. 109). The ALJ did not acknowledge these diagnoses.

During the administrative hearing, the ALJ stated that Plaintiff was "alleging asthma, depression, ventricular tachycardia, sleep apnea, anxiety, pulmonary lung capacity condition and diabetes type II." (Admin. Tr. 45). These are the diagnoses alleged in Plaintiff's original application only. The ALJ did not invite Plaintiff or counsel to correct his statement. The ALJ did not evaluate any of these impairments at step two. Thus, there has been no determination of whether *any* these impairments

are medically determinable or severe. Accordingly, I find that the ALJ's step two assessment is not supported by substantial evidence.

The Commissioner contends that this error is harmless. Unlike an error on the issue of severity (the most commonly litigated type of step-two error), an error in an ALJ's evaluation of medical determinability will almost always have some potential to affect the outcome of a case. Caselaw is clear that:

> an ALJ's failure to find an impairment medically determinable at [S]tep [T]wo, or to support a finding that an impairment is not medically determinable, makes the ALJ's finding at subsequent steps of the sequential evaluation process defective and is cause for remand. *Christenson v. Astrue*, Civil No. 4:10-CV-1192, 2011 U.S. Dist. LEXIS [110315, at* 15-16] (M.D. Pa. Sept. 14, 2011) ("The failure of the administrative law judge to find that condition as a medically determinable impairment, or to give an adequate explanation for discounting it, makes his decision at step four of the sequential evaluation process defective."); *Crayton v. Astrue*, Civil No. 4:10-CV-01265, 2011 U.S. Dist. LEXIS 139414 (M.D. Pa. Sept. 27, 2011); *Shedden v. Astrue*, Civil No. 4:10-CV-2515, 2012 U.S. Dist. LEXIS 30467[,] at *37, 2012 WL 760632 (M.D. Pa. Mar. 7, 2012).

*Hartzell v. Colvin*, No. 3:15-CV-2441, 2017 WL 34701 at *2 (M.D. Pa. Jan. 3, 2017); *Shedden v. Astrue*, 2012 WL 760632 at *9 (M.D. Pa. Mar. 7, 2012) (finding that an ALJ's failure to address a diagnosis of radiculopathy, in addition to the claimant's medically determinable impairment of degenerative disc disease, where the claimant was already restricted to an RFC of light work with a sit/stand option, required remand); *Crayton v. Astrue*, 4:10-CV-1265, 2011 U.S. Dist. LEXIS 139414

Page 17 of 19

at *51 (M.D. Pa. Sept. 27, 2011) (finding that an ALJ's failure to address diagnoses of chronic pain syndrome, gastroesophageal reflux disease, hepatitis C, insomnia, urinary frequency, herpes and hyperlipidemia, where the medically determinable impairments of degenerative disc disease and obesity had been recognized and the claimant was already restricted to an RFC of light work, required remand); *Christenson v. Astrue*, No. 4:10-CV-1192, 2011 U.S. Dist. LEXIS 110315 at *15-16 (M.D. Pa. May 18, 2022) (finding that an ALJ's failure to address right brachial plexopathy, atrophy of the supraspinatus muscle and posterior deltoid muscle, insomnia, thoracic pain, multilevel spondylosis of the thoracic spine, and thoracic radiculopathy, in a record where the ALJ identified the impairments of right cervical radiculopathy, right rotator cuff tendinopathy and pain, migraines, and intermittent lumbosacral myofascial pain with intermittent radiculopathy and limited the claimant to the performance of sedentary work, required remand); *Little v. Astrue*, No. 4:10-CV-1626, 2011 U.S. Dist. LEXIS 150308 at *25-26 (M.D. Pa. Sept. 14, 2011) (finding an ALJ's failure to recognize a lower back impairment at step two, in a record where the ALJ recognized a severe impairment of depression and limited the claimant to a sedentary RFC, required remand).

Turning to the facts of this case, and considering the caselaw discussed above, the ALJ's failure to make any finding at step two about the conditions of bipolar

disorder, migraines, and hip osteoarthritis require remand. Plaintiff clearly identified these three impairments as conditions contributing to her disability. Plaintiff did not offer testimony about the symptoms and limitations these conditions cause. Furthermore, the potential limiting effects of these conditions include both exertional and non-exertional functions. This step two error calls into question the completeness of the ALJ's RFC assessment and undermines the support for his conclusions at steps four and five of the sequential evaluation process. For these reasons, remand for a new administrative hearing is required.

V.   CONCLUSION

Accordingly, I find that Plaintiff's request for relief will be GRANTED as follows:

(1)   The final decision of the Commissioner will be VACATED.

(2)   This case will be REMANDED to the Commissioner to conduct a new administrative hearing pursuant to sentence four of 42 U.S.C. § 405(g).

(3)   Final judgment will be issued in favor of Jennifer Vazquez-Rivera.

(4)   An appropriate Order will be issued.

Date: September 27, 2022                    BY THE COURT

                                            _s/William I. Arbuckle_
                                            William I. Arbuckle
                                            U.S. Magistrate Judge